[No. B023408. Second Dist., Div. Five. Aug. 31, 1987.]

THE PEOPLE, Plaintiff and Respondent, v.
GARY ERNEST RUSSELL, Defendant and Appellant.

**COUNSEL**

Michael S. Meza for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, William R. Weisman and Joan Comparet, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**HASTINGS, J.**—Gary Russell appeals from his jury conviction of possession of cocaine for sale (Health & Saf. Code, § 11351) and possession of

marijuana for sale (Health & Saf. Code, § 11359). His sole contention of error involves the trial court's denial of his motion to suppress evidence seized by the police pursuant to their search warrant. For reasons discussed below, we affirm.

## FACTS

On January 15, 1985, police officer Rodney Uyeda (Uyeda) obtained a search warrant for defendant's premises in Monrovia, California. The warrant authorized a search of the premises and defendant for "amphetamine and methamp[h]etamine, and narcotic related paraphernalia, . . ."

Approximately one week later, on January 23, Uyeda and approximately 12 other officers executed the warrant. In so doing, the officers knocked on the front door of the residence and detained defendant along with his mother, father and daughter.

Uyeda then had fellow officer Miglia take the latter's narcotics detection dog (Dandy) through the house. Dandy, who is trained to detect only heroin, cocaine and marijuana, was drawn to a set of bedroom drawers. A search of the drawers uncovered 10 grams of cocaine and 73.5 grams of marijuana. The officers also uncovered drug related paraphernalia, including assorted paper bindles, baggies, screens, strainers, jars labeled "mannitol" and "sorbitol," a funnel, a spoon, a scale and a small-caliber revolver. Further, the officers found several items of defendant's personalty (diplomas, mail, books, clothing) linking him with the contraband.

In his defense, defendant's mother (Ivy), who also lived at the residence, claimed the cocaine belonged to her. She asserted the marijuana was left by other parties who had stayed at the house. Ivy also claimed she sold cocaine to support her granddaughter and denied stating she had no knowledge of the drugs found by the police.

## DISCUSSION

 Defendant argues that the trial court erred in denying his suppression motion (Pen. Code, § 1538.5) because the search warrant for amphetamine and methamphetamine was used as a pretext to search for cocaine. The facts and the record do not necessarily support this contention. Instead, it appears that the exclusion of cocaine from the search warrant was probably inadvertent.

Uyeda's affidavit in support of his request for the warrant stated a confidential informer advised him "that he/she knew that cocaine and

crank [were] being sold and supplied by the above described individual, Gary Russell, at the above listed location. . . . The informant further stated that the suspect Russell deals in large quantities of cocaine, usually, multi-ounces to pounds." The warrant authorized a search for "amphetamine, methamp[h]etamine, and narcotic related paraphernalia, consisting in part, but not limited to, syringes, spoons, strainers, razor blades, straws, and cutting agents, scales and other-weighing devices, . . ." The paraphernalia listed encompasses items which might be used with any number of controlled substances, especially cocaine. (E.g., *People* v. *Ashton* (1985) 39 Cal.3d 481, 487 [216 Cal.Rptr. 771, 703 P.2d 111].) The presearch arrangement to have Dandy present also indicates that Uyeda probably thought that a search for cocaine was within the ambit of the warrant. He informed Officer Miglia, Dandy's custodian, prior to the search to be present with Dandy because a search for cocaine would be made.

In view of the above, we cannot agree with appellant that the warrant was issued as a pretext to search for cocaine. It stated sufficient facts to have had cocaine included in the scope of the search. Defendant does not assert the warrant itself was invalid for want of probable cause. This is not a warrantless search case. The police were legally on the premises with a warrant that permitted the officers to search the residence, the garage and "all rooms, attics, drawers, cupboards, freezers, appliances, clothes, and other parts within the residence, and all . . . trash containers and storage areas designated for use of the residence. . . ." Clearly, the police were entitled to search the areas where the contraband was found—bedroom drawers, etc. The only issue is whether they were entitled to have Dandy present.

In *Dalia* v. *United States* (1979) 441 U.S. 238 [60 L.Ed.2d 177, 99 S.Ct. 1682], the United States District Court for the District of New Jersey granted a government request to intercept all oral conversations in a suspect's office, pursuant to title III of the Omnibus Crime Control and Safe Streets Act of 1968 (18 U.S.C.S. §§ 2510-2520). The federal agents assigned the task of implementing the order entered the office secretly at night and installed the electronic device. The surveillance order had not authorized entry of the office in this manner. The motion to suppress the evidence gathered was denied. The United States Supreme Court stated that the constitution and court decisions do not require search warrants to include a specification of the precise manner in which they are to be executed, and noted "On the contrary, it is generally left to the discretion of the executing officers to determine the details of how best to proceed with the performance of a search authorized by warrant—subject to the general Fourth Amendment protection 'against unreasonable searches and seizure.'. . . [¶] It would extend the warrant clause to the extreme to require . . . the court

[to] set forth precisely the procedures to be followed by the executing officers. Such an interpretation is unnecessary . . . [since] the manner in which a warrant is executed is subject to later judicial review as to its reasonableness." (*Dalia,* at pp. 257-258 [60 L.Ed.2d at p. 193].) In our present case, we find it was not unreasonable to have Dandy present when all of the information available to the officers is considered. As previously stated, we do not believe the officers were acting under a pretext or in bad faith.

However, if we assume for sake of argument that the search exceeded the scope of the warrant, no reversible error occurred. Without question, the dozen officers involved in the search at the residence would have inevitably located the evidence even without the help of Dandy. Dandy only hastened what the officers would have discovered anyway. (*People* v. *Superior Court* (*Tunch*) (1978) 80 Cal.App.3d 665 [145 Cal.Rptr. 795].) ▉▉▉▉ ▉ There is every indication the police acted in good faith. Accordingly, the doctrine of inevitable discovery controls.[1] (*People* v. *Superior Court* (*Tunch*), *supra,* 80 Cal.App.3d 665; also see *Green* v. *Superior Court* (1985) 40 Cal.3d 126, 136-139 [219 Cal.Rptr. 186, 707 P.2d 248].) We therefore find the trial court properly denied defendant's motion to suppress.

The judgment is affirmed.

Feinerman, P. J., and Ashby, J., concurred.

A petition for a rehearing was denied September 30, 1987, and appellant's petition for review by the Supreme Court was denied December 17, 1987.

---

[1] Although this theory was not advanced at defendant's suppression hearing, it may be raised on appeal. *Green* v. *Superior Court, supra,* 40 Cal.3d 126 considered this very issue and held that under similar circumstances it would not contravene general notions of fairness to do so. In short, the court observed that the doctrine of inevitable discovery presumed the evidence was illegally obtained, and that respecting the facts of their case, the record supported the theory's application, and the defendant had a fair opportunity to litigate the facts supporting the theory. (*Id.* at pp. 137-139.)

As in *Green,* the factual basis for the theory is fully supported by the record. Further, defendant's submission on the 99-page preliminary hearing transcript, dealing almost exclusively with the thoroughness of the officers' search, establishes defendant's opportunity to cross-examine the officers on the facts supporting the theory. Lastly, there is nothing on the record to suggest that defendant might have offered any evidence to refute the theory if it had been raised at the suppression hearing.